Case No. 24-1364, C.S. v. Craig McCrumb, et al., argument not to exceed 15 minutes per side. Mr. Volokh, you may proceed for the appellant. Thank you, Your Honors. May it please the Court, I'm Eugene Volokh. I'm counsel for C.S. So turning first to the substantive First Amendment issue, this case ought to be a straightforward application of Tinker v. Des Moines. Student speech is protected unless there's sufficient showing, specific showing of substantial material disruption or likelihood of such disruption, and we think that the evidence put forth on summary judgment by the defendants was not adequate. There is no exception to Tinker v. Des Moines, there's no exception to free school students. The Supreme Court made that clear in Good News, Good Sports Club. This Court's panel decision in Allentangy also recognized that elementary school students are protected. I realize that decision has been vacated pending in bank, but I don't think anything in the dissent or anything that seems like... Well, yeah, that sounds good, but there's special circumstances here with the number of students who were transferees from this Oxford school where they've had the mass shooting and the students here are so young, and there are a number of factors that were, and reportedly there were traumatized students in the school, and there's special circumstances here that are not present elsewhere. It gave rise to some of the other cases I assume you're alluding to that would be the progeny of Tinker, so this case may be a case deserving of exceptional consideration, don't you think? Your Honor, we don't think so. The Tinker test has within it the possibility for recognizing that under particular facts there could be specific evidence of material and substantial disruption. We just don't think this was satisfied here. As we understand... Why is that? I mean, you do recognize this is in the neighborhood of this other school that had had this shooting and there were traumatized students in the school, and why is it that the special circumstances are not deserving of some consideration? Your Honor, so as we understand it, two counties over there had been a shooting at a high school in the Oxford school district. There were some elementary school students transferred over into this elementary school from that district, but the only evidence, or the only argument put forth by the school defendants was that they thought that there might be some possible offense or some possible trauma to the students. There was no ten... I struggled with that in the briefing because it doesn't seem to me that that's an accurate representation of what the evidence is in the case. Isn't there testimony in this record that, I think it was the principal, that students who had transferred in, the principal had either met with parents or others about handling the issue where, what, seven children were shot, four were killed, just two counties over. My understanding is that there's other evidence in the record that the children that were here were in fact involved in being counseled and having treatment and that the principal was, or principal or other individuals in this school were aware that that was going on. Why isn't that a substantial piece of evidence regarding potential disruption and problems? Your Honor, as we understand it, there was no evidence that was tied to the potential speech involved, or to the speech involved in this case. There was no evidence that the students would be traumatized by seeing a picture of a weapon or the message coming to them. What kind of evidence would you expect that someone would testify that you can't use that hat if instead what the evidence is, is there a reasonable prognostication of disruption of education? The testimony in the record is these students came from a mass murder situation within their state. It's not like it's Wisconsin, Schoenecker is at Wisconsin in Florida. It's two counties over. These families transferred their children here. The school knows these children are in counseling and treatment for what they viewed and for what happened at the other school right in their community. Help me understand what your expectation would be as to why that is not evidence of danger and harm to children in this school. Yes, Your Honor. I think that this court's Confederate flag cases offer a good illustration. So there was Castorina where the court concluded that speculation, even not ridiculous speculation of course, that Confederate flag might be disruptive is not sufficient for the school just to prevail, certainly not as a matter of law. In the subsequent cases like Defoe, this court made clear that there was actually evidence of racial tensions in the school. There had been evidence that problems had been caused by Confederate flags in other situations and that that was sufficient. Likewise, if here there had been evidence even in some neighboring school, in the school district that somebody wearing something that alluded to weapons or showed a picture of a weapon actually caused disruption or caused trauma or whatever else, that... So your position would be when a hat is worn in a child's school, in an elementary school, and the hat has a gun, an AK-47, a big gun, and it says, come and take it, that someone has to come to that child and try to take it before you have evidence that that provocation suggests substantial disruption in the school? Yes, Your Honor. If I might suggest, it sounds like there are two arguments in play here, one focused on the weapons and one focused on the message, come and take it. As to the message, come and take it, which could be even without the presence of a weapon, then our answer is yes, that there are lots of things that people say that are, and people write that are not understood literally. I've never heard of somebody seeing a common, at any age, seeing a come and take it sign and saying, oh, that's a literal instruction for me or that's kind of a taunt to me that I would react this way. Well, may I ask, unless Judge Stanch was about to ask something else. I can't be Judge Stanch because I'm remote. Jane, were you about to ask another question? No, you go ahead. Okay. All right. I want to talk about the combination of the come and take it with the image of the AR-15 rifle. Is there an implicit threat there that if someone tried to take the hat, it would be met with violence, i.e., gunfire? No, Your Honor, that would be not... How would that be a reasonable interpretation? What is the combination of the two supposed to mean? Your Honor, what it's supposed to mean is that free people, at least as I understand the message, that a free people ought to maintain their right to bear arms and that that is not something that the government ought to take away from them. That's the conventional understanding. In a sense, it's kind of like the don't tread on me flag that we sometimes see with a rattlesnake. I don't think that anybody would interpret it as, oh, don't actually step on my blue suede shoes, don't actually step on me, or else I have a rattlesnake in my pocket and it will bite you. I think it's understood, even by children, that it is metaphorical rather than literal. Well, I guess... If I worry about the connection between the message and the image, isn't this placed, do you believe? Your Honor, we think that it is, but if there had been any evidence that somebody actually came up and tried to take the hat, that would be different. In a sense, it's like the situation in Tinker v. Des Moines. This was... There wasn't time for the harm to take place here because the concern about asking that the hat be removed, all that happened on the first day that the child appeared with the hat. And actually, the school frames the issue a little differently than you do. The school frames the issue being that they're entitled to protect the children without waiting for the harm to transpire. If the harm seems possible or imminent, you can ameliorate the threat or the possible harm in advance of it happening so the harm does not transpire. That's the way I think your opposing party frames the issue. And given these special circumstances, what's wrong with that approach? Your Honor, we agree with half of that. If the harm is imminent, then by all means the sufficient specific evidence of likely harm, they could do that. But if it's simply possible, that cannot be enough. Otherwise, there would be nothing left to Tinker. In Tinker, of course... Here's the question that falls from that, is that what Tinker and other cases give is the right of the school to exercise its knowledge and expertise regarding the capacity of the students there. And there's no question that the law is that elementary schools fall in a different category from high school. I think the law is clear on that. And what you have is counselors and leaders and principals in this school who deal with elementary students all the time, know that they have come from a traumatic experience, and know that they are engaged in being counseled for it. And they make what Tinker and other cases speak to about the reasonable understanding of a potential for danger. I guess my struggle is, I can understand how you might say as an adult, well, everybody understands it to mean this way, but an elementary school, a second or third grader, is not an adult. And the people in that school, even under all of the Tinker and all of the cases, have the capacity to exercise their expertise. So what is it about the expertise of the knowledge of elementary school teachers and leaders that it is not reasonable for them to anticipate that an eight-year-old might think, come and take it, means come and take this hat away from me, or some other potential problem? Your Honor, Tinker secures in the first place the rights of students. Those rights can be overcome by a showing of sufficient material and substantial disruption. But those rights do exist in the elementary school context. Perhaps a good analogy might be the Newsom case from the Fourth Circuit, which involved a sixth grader, to be sure not the same as a third grader, but not a very substantial difference. And the court there pointed out that there needed to be a specific and significant fear of disruption, not just some remote apprehension of disruption. So we think that this applies here as well. Why don't you think that that's the distinction between the Schoenecker case, in which the difference was it was a national problem, and we had a Florida example, and a Wisconsin case. Here the evidence and the record is that it is in fact in this community, and that these children understand that four children were murdered in a school right down the street from them, and seven were shot. I'm just struggling to understand how, I feel like the law in your analysis assumes that there must be evidence existing of disruption, and my understanding is that the law asks is it reasonable and appropriate for the officials in this school to have made the determination that there is a significant, I agree with you, potential for harm or for disruption? Your Honor, well, if there is indeed a factual dispute about the specific and significant fear of disruption, that might counsel to deny the summary judgment motions altogether and have it be considered by a jury to decide which of the stories is more plausible. What is the story on the other side, other than this concept that we all understand or everybody knows that this doesn't mean come and physically take it, which I would not assume that myself. Your Honor, if I may answer your question, so first the burden is on the school, and the come and take it I think is an excellent example. That's the very sort of thing that I think a jury could say, you know, we know some second and third graders ourselves, or people who used to be that, and is it reasonable, as you suggested, to think that somebody wearing a come and take it hat, somebody else would come and take it, or try to come and take it. And they may say, you know, under the circumstances, we don't think it's reasonable. But it certainly doesn't appear to us that as a matter of law, we think as a matter of law, we should prevail. But even if we're mistaken in that, we don't think that as a matter of law, this is sufficient, specific, and significant fear of reasonable disruption to take the matter away from the jury and resolve it and fix it. Is it, because it's a violation claim against the school itself, is it not, it's not a free flowing question of what anybody in the public might think this meant, isn't it a question of whether the school officials exercising their expertise and knowledge made a reasonable and appropriate decision? Your Honor, that would be the question. And that would be a classic question that a school would, excuse me, that a jury would decide, just as in a negligence case, a jury might be asked, was it a reasonable decision for a driver to act in a particular way, or for a school district to make a particular decision with regard to safety and the like? Your Honors, if I may reserve three minutes for a moment. Thank you. Very good. Good morning, Your Honors. Dan Lobel on behalf of the defendants' appellees. I think the court had some great questions in really framing this issue. Our argument here today is for the district court's opinion to be affirmed, mainly in light of the special characteristics of this particular case, so to speak, which is authorized by Tinker. We have the district court considering the age of the students on this particular circumstance. It was an 8, I believe she was either 8 or 9, in third grade at the time of this incident happening. Temporal considerations of Oxford happening just three months before the hat comes to school, as well as the maturity of the students in regards to the slogan, come and take it. But as the court pointed out, we as adults can sit here all day and say, well, I don't think I would take somebody's hat off their head. But that's where, as the court has acknowledged, that discretion or that expertise of the school officials comes in. We would also note, Your Honor, that there's ample evidence on the record that these are reasonable and specific concerns that Principal LaFell had given her expertise. These aren't just generalized concerns of, well, somebody might be offended by it. We know we have actual people or students in the school who are receiving counseling by way of student services for the incident that happened with Oxford. And I would say, Your Honor, that even if the Oxford event was not present in this case, we also have just the provocative nature of the slogan, come and take it. I would think that the school would be justified enough in and of itself to limit speech in that particular circumstance just to prevent these, I would say, immature students or younger students from trying to take the hat from C.S.'s head. But also, Your Honor, as far as the evidence is concerned, the plaintiffs are stating that there's a question of fact for the jury to decide. But there's nothing in the record here for this case that, for instance, testimony of classmates that they would not have been offended by the hat or that they wouldn't have tried to take the hat off of C.S.'s head. No experts to say that the imagery of the firearm in and of itself would not have caused some type of harm or affected the learning atmosphere for that day. And finally, Your Honors, I'll yield to any questions that you might have. But I think that the court has identified these issues pretty clearly as well as what we've set forth in our brief. Well, your opposing counsel says that the school acted too precipitously and should have waited. I don't want to speak for them, but should have waited until there was an actual problem that was evidenced or that emerged. What's your client's explanation as to why it needed to take the action that it did without first awaiting for the disruption to take place? Well, Your Honor, number one, I believe it's Bethel v. Frazier that recognizes that the school did not wait for the actual disruption to occur in order to limit the speech, as well as the specific rationale for limiting speech in those circumstances. As far as the evidence that's in the record, again, I believe that the hat was removed early on in the day to prevent, say, somebody from seeing it, somebody from taking it. I believe that Mr. Ponick noticed the hat before classes had even started for the day, and that's when he approached Ms. LaFell. So that would be the reasoning and rationale for kind of nipping the issue in the bud before any of these issues could kind of expand and complicate the day. And as I understand it, your argument is that what was done here was not incompatible with the requirements of the Tinker case. Do you want to say anything more about that? Well, Your Honor, Tinker gives the two standards, essentially, which is there's either a reasonable material substantial interference that's occurring to the learning environment in order for the school to restrict speech, but there's also a requirement that if the speech infringes on the rights of other students, that the school would also be empowered to limit that in certain respects. So the progeny of the Tinker cases has come down to say that if there are these special characteristics of speech where, for example, younger students might be more impressionable or the speech has the potential of having a greater substantial negative effect on the learning environment in that specific case, that this has evolved, so to speak, from a progeny from Tinker. All right. Thank you. Thank you, Your Honor. Your Honors, so just a few points. One is the burden of proof as to speech restrictions is on the government. Say that again? The burden of proof as to speech restrictions is on the government. So if the jury were asked to consider this matter, they would consider what the school testifies to, and then they may consider whether that is sufficiently credible to be a reasonable prediction. And we certainly don't think that the school has to wait until there's an actual problem that happens, but there has to be some reasonable forecast that might be based on the problem having happened in this school. It may be based on something having happened elsewhere. It may be based on something that the jury concludes is reasonable just in light of common understanding. But in this instance, this is from the deposition of Amy Leffel on page 26 of the deposition. With regard to the hat, here's what Ms. Leffel said. What kind of disruption did you think that it might cause was the question. Again, I would only theorize about what could have happened. But we have young kids who can be very impetuous and could perceive that as a dare to try and take the hat off of her. This is a theorizing, self-confessed theorizing about what can happen, what they could perceive. That's, we think, not enough, certainly, to make it as a matter of law adequate under the law. Well, you know, there are two possible kinds of harm in this situation. One is that the worst case scenario would be there would be some sort of incidence of violence. Or if it doesn't rise to the level of overt violence, maybe there would be, maybe the fights would break out among the kids or some other kind of disturbance. That would be one kind of harm. The other harm potentially would be the mental or emotional traumatization or harm that the children would experience from some of them just having seen classmates shot to death at the other school or having heard about such things. So the emotional or mental distress or harm is a different harm but also one that the school might have or will have been apprehensive about. Is that second kind of harm one that the school could take into account or be concerned about or when you talk about harm, are you just talking about physical incidence of disruption within the school and that's really the only thing that should be addressed? Is that your argument? Your Honor, we think that serious fear or trauma may be a form of disruption and a reasonable prediction of it may be as well. But in Tinker itself, one could have made the same argument and in fact Justice Black made that argument in dissent that this was a case involving the Vietnam War. People may have had strong feelings. Maybe that some people had relatives, some of the students had relatives who were fighting or who had died and who might see that as disrespectful and triggering in various ways. There has to be sufficient evidence that this is a reasonable forecast and that is something that we do not think has been shown as a matter of law at least in this very case. Do you think that our Lowry case makes a difference in this? Doesn't our Lowry case clarify that it is within a school official's authority to intervene preemptively? Yes, Your Honor. Tinker doesn't require the disruption to have actually occurred? Your Honor, we agree entirely that that is so. But it has to be preemption on something more than just theorizing about what could happen. What do you think of the statements in the Bethel case that speak to when speech is offered in the school setting, we must consider the sensibilities of the audience? Your Honor, so the Bethel case applies to vulgar speech. In that case, it was actually in the context of someone speaking to a school assembly. But the Bethel case has been expressly limited to vulgar speech. We see that, for example, that's how it's discussed in Mahanoy School District and in other cases. Bethel is an exception to Tinker and it is an exception that is justified precisely by You think that the case law distinctly limits Bethel only to vulgarity as opposed to statements about free speech rights? Yes, Your Honor, we believe that that is so. I thought we had a cite to that in our brief. We'd be very happy to supplement, to file a 28-J letter explaining why this is so. Often in speech cases, they arise in a particular context that does matter. But the principles and the rules within those cases are then applicable to speech in general. Your Honor, that is generally true. We think that that has been specifically foreclosed with regard to the Bethel School District and we'll be very happy to file a 28-J letter citing those authorities. Thank you, Your Honors. Thank you very much. The case is submitted.